**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Eugenio De Jesus**
**MONTOYA–ARRUBLA,**
**Defendant-Appellee.**

**No. 83–5262.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 3, 1985.

N. Peter Kostopulos, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

A. Scott Miller, Miami, Fla., for Montoya-Arrubla.

Before HENDERSON and CLARK, Circuit Judges, and ATKINS *, District Judge.

ATKINS, District Judge:

This appeal was taken by the government from an order granting the motion of the defendant, Eugenio de Jesus Montoya Arrubla, to suppress statements he made to United States Customs Patrol officers. Montoya argued in his motion to suppress that since the statements he had made were not freely and voluntarily given, he had not waived his right under *Miranda* to be silent. In support of this argument, the defendant and his shipmate, Jorge Echeveria, testified that Montoya was heavily intoxicated on the Sunday morning of his arrest.

In the early morning hours of Sunday, October 24, 1982, Montoya was arrested on board the merchant vessel, MAYA, which was docked on the Miami River. He and a co-defendant were indicted on November 3, 1982 for conspiracy to possess with intent to distribute twenty-six pounds of cocaine in violation of 21 U.S.C. § 841(a)(1).

The dispute in this appeal focuses on which night Montoya and Echeveria had been out drinking, Friday or Saturday night. The trial court made a specific finding that the "defendant and Mr. Echeveria, were both testifying to incidents occurring on the night immediately preceding [Saturday] and the morning of the arrest [Sunday] of the defendant." The trial court

also found that the defendant, just prior to his arrest, was semi-conscious from consuming in excess of twenty beers, that he slurred his speech and staggered when he attempted to walk. Further, the court specifically found that, at the time of the defendant's arrest at 4:00 on Sunday morning, his senses were impaired from the many beers he had consumed. Although other factors were present, it appears that the court relied on its finding that the defendant was intoxicated at the time of his arrest for granting the motion to suppress.

Since the issue here involves a factual determination, we cannot overturn the trial court's findings unless they are clearly erroneous. *United States v. Castro*, 723 F.2d 1527, 1533 (11th Cir.1984). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 96 L.Ed. 746 (1948); *Castro*, 723 F.2d at 1533.

In reviewing the transcript of the suppression hearing, we find that the defendant Montoya and his friend Echeveria consistently testified that the night they went out drinking was Friday night, not Saturday night. They were both able to recall Friday night as the night of their drinking because Friday was the day the MAYA arrived in Miami. On redirect examination of the defendant, defense counsel elicited the following testimony:

Counsel: Just to clarify the record, sir, do you remember the exact day of the week that you went out to go drinking?

Montoya: The exact day?

Counsel: Yes. Was it a Friday, Saturday, or Sunday?

Montoya: I remember that it was the day when we got here to Miami. (T. 125)

---

* Honorable C. Clyde Atkins, U.S. District Court Judge for the Southern District of Florida, sitting by designation.

It is not difficult to understand why men who are at sea for long periods of time would use an event as a point of reference rather than a date.

The fact that the MAYA arrived on Friday was corroborated by United States Custom Patrol Officer Lorenzo Mesa who testified that surveillance of the vessel began on Friday, the day it arrived (TR 27) and by United States Customs Special Agent Donald Reay who testified that the MAYA arrived in port on Friday, the 22nd of October (TR 127). The defense's own witness, Echeveria, also testified, on both direct and cross, that the MAYA always arrived on Friday and that Friday night was the night he and Montoya went out drinking. On direct examination, the defendant's attorney and Echeveria engaged in the following dialogue:

Counsel: And was the MAYA in port in Miami, Florida?

Echeveria: In Miami, Florida.

Counsel: Now, do you recall on that particular day going out one evening with a fellow crew member named Eugenio Montoya Arrubla?

Echeveria: Yes, I went out with Montoya, out in the streets.

Counsel: Actually, I asked you the 24th of October. It was actually the night of the 23rd of October.

Echeveria: It was in the afternoon that we left.

Counsel: Approximately what time did you leave?

Echeveria: Friday, in the afternoon, about 6:00 or 7:00, something like that.

The government followed up on this testimony in its cross-examination:

Counsel: And normally, the MAYA arrives and docks in Miami on Thursday; is that correct?

Echeveria: Friday morning we tie up.

Counsel: And it arrives about what time on Friday?

Echeveria: We arrive always about 6:30, 7:00 o'clock in the morning.

Counsel: And on this weekend when Mr. Montoya was arrested, it was like the other trips that you came to Miami, you arrived on Friday; is that correct?

Echeveria: Yes, as usual Friday morning.

Counsel: And I think you testified that you went out that evening with Mr. Montoya.

Echeveria: Yes, yes, we went out drinking that evening.

Counsel: After working that day?

Echeveria: Yes, after work that day.

Counsel: And are you sure it was that night.

Echeveria: Yes that night. Yes. Yes.

The witnesses testified to only one night that they were out together drinking. The record is clear, from their own testimony, that it was Friday night. The record is therefore devoid of any facts that would show Montoya to have been intoxicated on Saturday, the night before and, Sunday, the morning of his arrest. Further, the agents present at the arrest specifically testified that Montoya displayed no characteristics of intoxication. This is not a matter of credibility; there are simply no facts in the record that support appellee's argument.

We are convinced that it was clear error to find Montoya's senses so impaired from excessive drinking that he could not voluntarily waive his rights under *Miranda.* We therefore REVERSE the trial court's order to suppress to the extent that it relied, in granting the order, on its finding that the defendant was intoxicated. This case is REMANDED for further proceedings.